IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HANCOCK BANK, a Mississippi state
chartered bank, successor in interest to
Whitney Bank, a Louisiana state chartered
bank, formerly known as Hancock Bank
of Louisiana, successor by merger to Whitney
National Bank,     Case No. 3:12-cv-00234-MCR-CJK

    Plaintiff,

vs.

C-RED, INC., a Florida corporation, CARL S.
REDISH, JOSEPH L. REDISH a/k/a J.L.
REDISH, SUBWAY REAL ESTATE CORP,
a Delaware corporation, FARMERS BEST,
INC., a Florida corporation, and XIN MAN
ZHENG d/b/a JAY GARDEN CHINESE
RESTAURANT,

    Defendants.

## SUMMARY FINAL JUDGMENT OF FORECLOSURE

This matter is before the Court on Plaintiff's Motion for Summary Final Judgment (Doc. 39) seeking a foreclosure judgment under Count I of the complaint[1]. The Court has reviewed the file and finds that there are no disputed material facts and that Plaintiff is entitled to summary final judgment of foreclosure as a matter of law. The Court hereby incorporates by reference the undisputed material facts and conclusions of law as set forth in its Order (Doc. 64) dated April 12, 2013. Accordingly, it is

---

[1] Plaintiff also moved for summary final judgment against Carl S. Redish ("Redish") on Count II, but all claims against Redish have been automatically stayed in light of his pending bankruptcy.

**ADJUDGED THAT**:

1.   Defendant, C-RED, INC., owes Plaintiff, Hancock Bank, whose address is 1022 West 23rd Street, Panama City, Florida 32405, the following sums:

|     |     |     |
| --- | --- | --- |
| (1) | Principal | $677,280.04 |
| (2) | Interest through 02/17/2012 | 9,508.30[2] |
| (3) | Interest from 02/18/2012 to 01/06/2013 | 119,073.24[3] |
| (4) | Interest from 01/07/2013 to 04/17/2013 | 34,202.64[4] |
| (5) | Ad Valorem Taxes | 7,721.84 |
| (6) | Court Costs now taxed | 654.00 |
| (7) | Reasonable Attorneys' Fees | <u>18,283.50</u> |
|     | **TOTAL AMOUNT OF JUDGMENT** | **$866,723.56** |

Plaintiff is entitled to recover post-judgment interest at the legal rate prescribed by 28 U.S.C. § 1961 from the date of this judgment until paid.

2.   Plaintiff holds a lien for the total sum in Paragraph 1 above superior to all claims or estates of Defendants on the following described real and personal property located in Santa Rosa County, Florida.

   *See* **Exhibits A and B attached hereto**.

3.   If the total sum with interest at the rate prescribed by law due under Paragraph 1 above and all costs of this action accruing subsequent to this judgment are

---

[2] Based on the per diem note rate.
[3] Based on the per diem default rate and the principal loan amount outstanding prior to C-Red's additional principal payment that cleared on January 7, 2013.
[4] Based on the default per diem rate of $338.64 effective after January 7, 2013.

not paid prior to the commencement of the foreclosure sale by the United States Marshal (the "Marshal"), the Marshal is ordered and directed to sell the real and personal property described above, together with the right to collect all rents which may be due but remain unpaid or collected but not deposited by C-Red, Inc., or anyone acting on its behalf, at public sale.

4. Pursuant to Fed. R. Civ. P. 69, the procedures for sale shall be in accordance with the practice and procedure in the State of Florida as provided in Chapter 45, Florida Statutes (2012) except that title shall vest in the purchaser pursuant to a United States Marshal's Deed issued after confirmation of the sale by this Court.

5. The Marshal shall advertise the sale of the subject property in accordance with 28 U.S.C. §§ 2001-2002, and after giving proper notice, conduct the sale of the property at the North Door of the Santa Rosa County Courthouse, 6865 Caroline Street, Milton, Florida.

6. Plaintiff is authorized to bid at the sale and any bid by the Plaintiff shall be credited against the indebtedness due the Plaintiff under Paragraph 1 above. Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Marshal if Plaintiff is not the purchaser of the property at the sale in accordance with the Order Confirming Sale. If Plaintiff is the purchaser at the sale, the Marshal shall credit Plaintiff's bid with the total sum in Paragraph 1 above, with interest and costs accruing subsequent to this judgment or such part of it as is necessary to pay the bid in full. If a third party is the purchaser at the sale, 10% of the bid price by certified check or cashier's

check shall be paid at the time of the sale with the balance to be paid by certified check or cashier's check to the Marshal within 24 hours after the sale.

7. At a time immediately preceding the sale, all of the rents being held in trust pursuant to this Court's Order (Doc. 29) dated October 10, 2012, shall be paid to Plaintiff. The rents paid to Plaintiff shall be credited against the amount adjudicated due Plaintiff in this judgment.

8. Upon sale being made, the Marshal is directed to make a report and accounting of the proceeds realized from the sale, if any, and the bidder, or bidders, at such sale and report the amount of the sale for confirmation. The Marshal shall file the report of sale with the Court no later than fifteen (15) days after the sale. Upon the sale being made, the Marshal shall retain the proceeds from the sale until the Order Confirming Sale is entered by the Court.

9. Upon sale being made of the property and confirmed by this Court, the Court shall direct the Marshal to execute a United States Marshal's Deed to the property. At said time, the Defendants and all persons claiming under or against them since the filing of the Notice of Lis Pendens are foreclosed of all estate or claim in the property and the purchaser at the sale shall be let into possession of the property. As set forth herein, the Defendants' right of redemption expires at the time of the judicial sale ordered in this judgment.

10. The Marshal shall distribute the proceeds of the sale in accordance with the Order Confirming Sale.

11. Upon entry of the order confirming sale, the Marshall will execute and deliver the United States Marshal's Deed to the purchaser at the sale.  Plaintiff shall prepare the United States Marshal's Deed.  The purchaser at the sale shall pay for and be responsible for affixing to the United States Marshal's Deed any documentary stamps or taxes imposed upon the recordation of the deed.

12. <u>If the subject property is sold at public auction, there may be additional money from the sale after payment of persons who are entitled to be paid from the sale proceeds pursuant to the final judgment of foreclosure.  If you are a subordinate lienholder claiming a right to funds remaining after the sale, you must file a claim with the United States Marshal no later than 60 days after the sale.  If you fail to file a claim, you will not be entitled to any remaining funds.  If you are the property owner, you may claim these funds yourself.  You are not required to have a lawyer or any other representation and you do not have to assign your rights to anyone else in order for you to claim any money to which you are entitled.  Please check with the United States Marshal within ten (10) days after the sale to see if there is additional money from the foreclosure sale.</u>

13. This Court retains jurisdiction over this matter for the purposes of issuing writs of possession and a deficiency judgment.

**ORDERED** on this 17th day of April, 2013.

*M. Casey Rodgers*
M. CASEY RODGERS
Chief United States District Judge

# EXHIBIT A

(A)

Parcel 1:

The South 28 feet of Lot 4 and the East 29 feet of the South 78 feet of the North 150 feet of Lot 11 and Lots 5, 6, and 7, Block D, Wolfe's Subdivision, a portion of Section 40, Township 5 North, Range 29 West, Santa Rosa County, Florida, as recorded in Plat Book A, Page 66, of the Public Records of Santa Rosa County, Florida.

AND ALSO the South 46.0 feet of the North 196.0 feet of Lot 11, as described in Deed recorded in Official Records Book 575, Page 179, of the Public Records of said County.

Parcel 2:

Township 5 North, Range 29 West, Section 40: Lot 8, Block D, and a part of Lot 11, Block D, Wolfe's Subdivision, recorded in Plat Book A, Page 66, described as follows: Begin at the Southeast corner of said Lot 11; thence North along the East line of said Lot 106.24 feet to a point which point is also the Northwest corner of Lot 8 described above; thence West at right angles 132 feet; thence South at right angles 105.65 feet, more or less, to State Road #4; thence Easterly along said Road 132 feet, more or less, and back to Point of Beginning.

Being one and the same as described above and being more particularly described as follows:

Commence at the Northeast corner of Block D, Wolfe's Subdivision, a subdivision of a portion of Section 40, Township 5 North, Range 29 West, as recorded in Plat Book A, Page 66, of the Public Records of Santa Rosa County, Florida; thence go South 00 degrees 00 minutes 00 seconds East along the Westerly Right of Way line of Cherry Street (60' R/W) for a distance of 172.00 feet to the Point of Beginning; thence continue South 00 degrees 00 minutes 00 seconds East along said Right of Way for a distance of 238.48 feet to the intersection with the Northerly Right of Way line of U.S. Highway 4 (R/W Varies); thence go North 88 degrees 02 minutes 39 seconds West along said Northerly Right of Way line for a distance of 257.42 feet to an existing 1" iron pipe; thence departing said Right of Way go North 00 degrees 04 minutes 35 seconds East for a distance of 106.31 feet; thence go South 89 degrees 49 minutes 19 seconds West for a distance of 180.62 feet; thence go North 52 degrees 08 minutes 19 seconds West for a distance of 31.25 feet to the Southeasterly Right of Way line of Alabama Street (R/W Unknown); thence go North 37 degrees 10 minutes 00 seconds East along said Right of Way line for a distance of 33.91 feet; thence departing said Right of Way go North 90 degrees 00 minutes 00 seconds East for a distance of 288.52 feet; thence go North 00 degrees 13 minutes 44 seconds West for a distance of 78.00 feet; thence go North 90 degrees 00 minutes 00 seconds East for a distance of 154.00 feet to the Point of Beginning.

**LESS AND EXCEPT:**

*continued on next page*

COMMENCING AT THE NORTHEAST CORNER OF BLOCK "D", WOLFE'S SUBDIVISION, AS RECORDED IN PLAT BOOK "A" AT PAGE 66, OF THE PUBLIC RECORDS OF SANTA ROSA COUNTY, FLORIDA; THENCE GO SOUTH 00 DEGREES 00 MINUTES 00 SECONDS EAST ALONG THE WESTERLY R/W LINE OF CHERRY STREET (60' R/W) FOR A DISTANCE OF 410.48 FEET TO THE INTERSECTION OF THE NORTHERLY R/W LINE OF U.S. HIGHWAY 4 (R/W VARIES); THENCE GO NORTH 88 DEGREES 02 MINUTES 39 SECONDS WEST ALONG THE NORTHERLY R/W LINE OF STATE ROAD NO. 4 (100' R/W) FOR A DISTANCE OF 257.42 FEET; THENCE DEPARTING SAID NORTHERLY R/W LINE, GO NORTH 00 DEGREES 04 MINUTES 35 SECONDS EAST FOR A DISTANCE OF 106.31 TO A POINT ON THE SOUTH LINE OF THE NORTH 196 FEET OF LOT 11, FOR THE POINT OF BEGINNING; THENCE GO SOUTH 89 DEGREES 49 MINUTES 19 SECONDS WEST ALONG SAID SOUTH LINE FOR A DISTANCE OF 180.62 FEET TO AN INTERSECTION WITH THE SOUTHWESTERLY LINE OF LOT 11; THENCE GO NORTH 52 DEGREES 08 MINUTES 19 SECONDS WEST ALONG SAID SOUTHWESTERLY LINE FOR A DISTANCE OF 31.25 FEET TO AN INTERSECTION WITH THE SOUTHEASTERLY R/W LINE OF ALABAMA STREET (R/W WIDTH UNKNOWN); THENCE GO NORTH 37 DEGREES 10 MINUTES 00 SECONDS EAST ALONG SAID SOUTHEASTERLY R/W LINE FOR A DISTANCE OF 33.91 FEET TO AN INTERSECTION WITH THE SOUTH LINE OF THE NORTH 150 FEET OF LOT 11; THENCE GO NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST ALONG SAID SOUTH LINE FOR A DISTANCE OF 184.87 FEET; THENCE GO SOUTH 00 DEGREES 04 MINUTES 35 SECONDS WEST FOR A DISTANCE OF 45.84 FEET TO THE POINT OF BEGINNING. THE ABOVE DESCRIBED PARCEL IS SITUATED IN SECTION 40, TOWNSHIP 5 NORTH, RANGE 29 WEST SANTA ROSA COUNTY, FLORIDA, AND CONTAINS 0.20 ACRES.

Together with all mineral, oil and gas rights appurtenant to said land.

**(B) THE IMPROVEMENTS**: All the buildings, structures, fixtures and improvements of every nature whatsoever now or hereafter situated on said Land (hereinafter called the "Improvements").

**(C) EASEMENTS**: All easements, rights-of-way, gores of land, streets, ways, alleys, passages, sewer rights, water courses, water rights and powers, and all appurtenances whatsoever, in any way belonging, relating or appertaining to any of the mortgaged property described in Sections (A) and (B) hereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor.

**(D) TOGETHER WITH** (i) all the estate, right, title and interest of the Mortgagor of, in and to all judgments, insurance proceeds, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the mortgaged property described in Sections (A), (B) and (C) hereof or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the mortgaged property described in Sections (A), (B) and (C) hereof or any part thereof, or to any rights appurtenant thereto, and all proceeds of any sales or other dispositions of the mortgaged property described in Sections (A), (B) and (C) hereof or any part thereof; and, if Mortgagor fails to do so, the Mortgagee is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquittances therefor, and shall apply all condemnation awards toward the payment of the Obligations or Guaranty, as applicable, notwithstanding the fact that the amount owing thereon may not then be due and payable; and (ii) all rights to insurance proceeds arising from or relating to the mortgaged property described in Sections (A), (B) and (C) above; and (iii) all proceeds, products, replacements, additions, substitutions, renewals and accessions of and to the mortgaged property described in Sections (A), (B) and (C).

**(E) TOGETHER WITH** all rents to which the Mortgagor may now or hereafter be entitled from the mortgaged property described in Sections (A), (B) and (C) hereof; provided, however, that permission is hereby given to the Mortgagor, so long as no Event of Default has occurred hereunder and is continuing, to collect and use said rents as they become due and payable. Upon the occurrence and during the continuancy of any such Event of Default, the permission hereby given to the Mortgagor to collect said rents from the mortgaged property described in Sections (A), (B) and (C) hereof shall be suspended.

All of the mortgaged property described in Sections (A), (B), (C), (D) and (E) above, and each item of mortgaged property described therein, is herein referred to as "THE MORTGAGED PROPERTY."

# EXHIBIT B

Those specific assets shown below and all equipment, inventory, accounts, contracts, chattel paper, investment property, general intangibles and all assets whether now or hereinafter relating or pertaining to the real property described in Exhibit A attached hereto.

| Item # | Description | Pieces |
|---|---|---|
| ~~1~~ | ~~Gilbarco dispenser, dual, 3 grades, mix by the pump, GRIND~~ | ~~2~~ |
| 2 | Gilbarco diesel dispenser | 2 |
| 3 | Veedar Root UST monitor system | 1 |
| 4 | Ice maker, 500 lb. | 1 |
| 5 | Office computer system with backup external hard drive | 1 |
| 6 | Security safe, 5 feet tall | 1 |
| 7 | Security safe, under counter | 1 |
| 8 | Walk-in cooler | 1 |
| 9 | Washer | 1 |
| 10 | Dryer | 1 |
| 11 | CCTV system | 1 |
| 12 | Office furniture | 1 |
| 13 | Display Shelves | 10 |
| 14 | Bar code readers | 3 |
| 15 | ATM machine | 1 |
| 16 | Walk-in cooler/freezer combo (used by subway) | 1 |
| 17 | Walk-in cooler - used by Jay Garden | 1 |
| 18 | Walk-in freezer - use by Jay Garden | 1 |